UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
(at Knoxville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 3: 13-09-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ROCKY JOE HOUSTON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Rocky Joe Houston's various motions to suppress evidence obtained from the surveillance of his property with a video pole camera and the January 11, 2013, search of his residence.[1] [Record Nos. 29; 46; *United States v. Clifford Leon Houston*, Criminal Action No. 3: 13-10 (E.D. Tenn. Jan. 14, 2013, Record Nos. 14, 16] These motions were referred to United States Magistrate Judge C. Clifford Shirley, Jr., pursuant to 28 U.S.C. § 636(b).  On March 15, 2013, Magistrate Judge Shirley conducted a hearing on these motions[2] and on May 17, 2013, he issued a report, recommending that the Court

---

1        On March 15, 2013, the defendant was permitted to adopt two motions to suppress the pole camera footage filed in his brother Clifford Leon Houston's criminal case, *United States v. Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record Nos. 14, 16. [Record No. 38, p. 2]  Additionally, on April 8, 2013, the defendant filed a Second Supplemental Motion to Suppress. [Record No. 46]  Despite the fact that the motion was filed well past the February 27, 2013, deadline, the magistrate judge found the Second Supplemental Motion to Suppress to be more of a legal memorandum, reiterating arguments raised by the defendant during oral argument and his previous motions to suppress. [Record Nos. 46, 51; Record No. 59, p. 2]

2        During the March 15, 2013 hearing, Assistant United States Attorney ("AUSA") David C. Jennings appeared on behalf of the United States.  The defendant proceeded *pro se* with the assistance of elbow counsel Norman D. McKellar.  At the conclusion of the hearing, the magistrate judge granted McKellar's *Ex Parte* Motion to Withdraw as Elbow Counsel, which was filed at the direction of the defendant. [Record Nos. 24,

-1-

deny the relief sought. [Record No. 59] On May 31, 2013, and June 5, 2013, the defendant filed objections to the magistrate judge's report.[3] [Record Nos. 62, 64] Having fully considered the matter, the Court will deny the defendant's motions to suppress.[4]

## I.

Neither Defendant Rocky Joe Houston, nor the government presented any evidence regarding the defendant's various motions to suppress at the March 15, 2013 hearing. As a result, the magistrate judge considered the sworn affidavits of Bureau of Alcohol, Tobacco, and Firearms ("ATF") Special Agent Jason Dobbs, filed in support of the defendant's Criminal Complaint and the December 19, 2012, and January 11, 2013, search warrants.[5] [*See* Record No. 59, pp. 2-4, 8-10; *see also* Record No. 3; *Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 15-1, pp. 9-25, Record No. 15-4, pp. 4-16.]

After receiving information that Defendant Rocky Joe Houston, a convicted felon, was in possession of firearms on his property, ATF agents, along with members of the Roane County

---

37]

3       The defendant's second set of objections (filed on June 5, 2013) were untimely filed. Therefore, his arguments raised therein will be denied on this alternative ground. *See* Fed. R. Crim. P. 59(b)(2).

4       While this Court must make a *de novo* determination of those portions of the magistrate judge's recommendations to which an objection is made, 28 U.S.C. § 636(b)(1)(C), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Moreover, a party who fails to file objections to a magistrate judge's proposed findings of fact and recommendation waives the right to appeal. *See United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008); *Wright v. Holbrook*, 794 F.2d 1152, 1154-55 (6th Cir. 1986). Having reviewed *de novo* the portions of the magistrate judge's report to which objections have been made, the Court concludes that Houston's objections are without merit.

5       The four search warrants and supporting affidavits issued in this matter are attached as exhibits to the various motions to suppress filed in Clifford Leon Houston's criminal case. [*See Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record Nos. 15-1, 15-2, 15-3, 15-4.]

Sheriff's Office, commenced an investigation. As part of the investigation, on October 9, 2012, a video camera was installed on a utility pole adjacent to the Houston family property on Dogtown Road. The pole camera had a view of the rear of the mobile home located at 391 Barnard Narrows Road, as well as the surrounding fields and roads. Although 391 Barnard Narrows Road is Clifford Leon Houston's residence, the defendant was observed spending a great deal of time at that residence or in the surrounding area. The defendant only made short trips back to his residence at 373 Barnard Narrows Road. Agent Dobbs indicated that the defendant occasionally slept at 391 Barnard Narrows Road based on observations that the defendant was seen at that location in the early morning hours without having been observed coming from his residence.

Video footage from the camera revealed the defendant possessed or used firearms on six dates in October 2012 and on multiple dates in November 2012. On December 19, 2012, law enforcement obtained court-authorization for the continued use of the pole camera. Based upon evidence collected throughout law enforcement's investigation of the defendant, on January 11, 2013, ATF agents obtained search warrants for the defendant's brother Clifford Leon Houston's residence (391 Barnard Narrows Road), the defendant's primary residence (373 Barnard Narrows Road), and the defendant's daughter's residence (412 Barnard Narrows Road). A search of the defendant's residence uncovered multiple firearms and ammunition.

The defendant was arrested on January 11, 2013. On January 15, 2013, he was indicted by a federal grand jury, charging him with fourteen counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The defendant has filed two motions to suppress

-3-

all evidence obtained as a result of the video pole camera. [Record Nos. 29, 46] He was also granted leave to adopt two motions to suppress filed in his brother Clifford Leon Houston's criminal case, *United States v. Clifford Leon Houston*, Criminal Action No. 3: 13-10 (E.D. Tenn. Jan. 14, 2013), Record Nos. 14, 16. [*See* Record No. 38, p. 2.]

## II.

In his various motions to suppress, Defendant Rocky Joe Houston contends that the warrantless use of the pole camera violated his Fourth Amendment rights and that the subsequent search warrants, which relied upon evidence obtained from the warrantless video footage, are invalid. He also challenges the neutrality of the issuing magistrate judge for each of the search warrants. The defendant seeks suppression of all evidence resulting from (i) the warrantless use of the pole camera to observe his property from October 9, 2012, to December 9, 2012; (ii) the continued use of the pole camera pursuant to the December 19, 2012, search warrant; and (iii) the search of the three residences on the Houston family property on January 11, 2013. Magistrate Judge Shirley concluded that the defendant's arguments were without merit and that suppression is not warranted. [Record No. 59]

As noted above, the defendant was granted leave to adopt two motions to suppress filed in his brother Clifford Leon Houston's criminal case. In that matter, relying on nearly identical arguments, Clifford Leon Houston filed seven motions seeking the suppression of the same evidence the defendant attempts to suppress in this matter. On July 30, 2013, the Court denied each of the Clifford Leon Houston's motions to suppress, finding that Clifford Leon Houston's motions lacked merit and that suppression was not warranted. The Court adopts and

-4-

incorporates the reasoning of its July 30, 2013 Memorandum Opinion and Order. [*See Clifford Leon Houston*, No. 3: 13-10, Record No. 166] Additionally, the Court will address Defendant Rocky Joe Houston's motions to suppress and his objections to the magistrate judge's Report and Recommendation.

In his objections, the defendant essentially restates his prior arguments that the magistrate judge found to be without merit. Specifically, he asserts that his Fourth Amendment rights were violated because: (i) a warrant was not issued for the use of the pole camera from October 9 to December 19, 2012; (ii) the December 19, 2012 search warrant for the continued use of the pole camera was not supported by probable cause; and (iii) Magistrate Judge H. Bruce Guyton was not a neutral and detached judge when signed the December 19, 2012 search warrant for the continued use of the pole camera. He also contends that the use of the pole camera was not conducted in good faith. Finally, he argues that Magistrate Judge Shirley improperly ruled on his motions to suppress while having a conflict of interest. However, suppression of the evidence is not warranted and the defendant's objections will be overruled.

A. **The Pole Camera from October 9, 2012 to December 19, 2012**

1. **Video Surveillance and Implication of Fourth Amendment**

The defendant argues that law enforcement's warrantless use of the pole camera (located on public property adjacent to his residence from October 9, 2012 to December 19, 2012) violated his Fourth Amendment rights. He contends that: (i) he has a legitimate expectation of privacy to be free from video surveillance; (ii) the length of the video surveillance was unreasonable; and (iii) no exigent circumstances existed preventing law enforcement from

seeking a search warrant for the installation of the pole camera. He also argues that the pole camera was not used in good faith, as demonstrated by pole camera having been used to "spy" on his neighbors who were not the subject of the investigation.

The government counters that the use of this camera was not a search implicating the Fourth Amendment because law enforcement could lawfully view the area covered by the camera from two public roads. Additionally, it asserts that the defendant had not manifested a reasonable expectation of privacy in the area viewed, as evidenced by their use of billboards and hand-painted signs erected on the property approximately twenty yards off the road. The government also points to the lack of any type of fencing or barriers around the area. It contends that, although the pole camera had a zoom function and may have occasionally recorded the Johnson residence, that it was continuously focused on the property and activities of the defendant, including when he was observed with other family members. [Record No. 54] The United States further argues that, even if the Court were to find that the use of the pole camera during this time period implicated the Fourth Amendment, the exclusionary rule should not apply because law enforcement acted in good faith.

The magistrate judge began his analysis by examining whether the defendant had standing to contest the video surveillance of his brother's curtilage. [Record No. 59, pp. 7-11] Due to the frequency of the defendant's visits to his brother's residence and because he may have been an occasional overnight guest, along with his familial relationship with the owner, the magistrate judge correctly concluded that the defendant has a recognized privacy interest in 391

-6-

Barnard Narrows Road.  *See Minnesota v. Carter*, 525 U.S. 83, 90-91 (1998); *United States v. Pollard*, 215 F.3d 643, 647 (6th Cir. 2000).

Having determined that the defendant has standing to challenge the video surveillance of his brother's curtilage, the magistrate judge next examined whether video surveillance is a search that implicates the Fourth Amendment.   [Record No. 59, pp. 12-19]   When law enforcement began using the pole camera to monitor the defendant, no court had held that the use of video surveillance to monitor the unobstructed curtilage of a property required a search warrant.  *See United States v. Jackson*, 213 F.3d 1269, 1280 (10th Cir. 2000), *vacated on other grounds*, 531 U.S. 1033 (2000) ("The use of video equipment and cameras to record activity visible to the naked eye does not ordinarily violate the Fourth Amendment.").  Although some courts have voiced concern over the potential for abuse regarding the use of video surveillance over an extended period of time, those that examined the issue found it not to implicate an individual's Fourth Amendment rights if the camera could not see into the residence and captured no footage that was not "otherwise exposed to public view."  *United States v. Urbina*, No. 06-CR-336, 2007 U.S. Dist. LEXIS 96345, at *19 (E.D. Wis. Nov. 6, 2007), *adopted by United States v. Aguilera*, No. 06-CR-336, 2008 U.S. Dist. LEXIS 10103 (E.D. Wis. Feb. 11, 2008); *see also Jackson*, 213 F.3d at 1281; *United States v. Nowka*, No. 5:11-CR-474-VEH-HGD, 2012 U.S. Dist. LEXIS 178025, at *15-16 (N.D. Ala. Dec. 17, 2012); *United States v. Brooks*, No. CR-11-2265-PHX-JAT-003, 2012 U.S. Dist. LEXIS 168737, at *19-22 (D. Ariz. Nov. 28, 2012); *Cuevas-Sanchez*, 821 F.2d 248, 251 (5th Cir. 1987) (holding that where an individual erected ten-foot tall fence that blocked the view from the street, thus manifesting a

subjective expectation of privacy in curtilage, video surveillance constituted a search under the Fourth Amendment). Here, the magistrate judge correctly concluded that, at the time the agents installed the pole camera in issue, silent video surveillance of unobstructed curtilage which neither involved a physical trespass nor permitted officers to view or discern activities within a residence was not deemed to be a search implicating the Fourth Amendment. [Record No. 59, pp. 12-19]

Additionally, because most of the area within the scope of the pole camera was either pasture land or open fields, the defendant did not have a reasonable expectation of privacy in those areas. *See Oliver*, 466 U.S. at 178; *United States v. Anderson-Bagshaw*, 509 F. App'x 396, 403-04 (6th Cir. 2012) (holding that video surveillance of barnyard and pasture did not constitute a Fourth Amendment search) (citing *States v. Vankesteren*, 553 F.3d 286, 291 (4th Cir. 2009) (noting that the use of surveillance cameras to film an open field does not violate a reasonable expectation of privacy)). Specifically, the four sightings of the defendant in possession of a firearm during this relevant time period (which Special Agent Dobbs attested to and cited in support of the December 19, 2013 pole camera search warrant) occurred in the open fields of the Houston property.[6] As a result, the video footage of these sightings is not subject to suppression. [Record No. 59, pp. 20-21]

Magistrate Judge Shirley also analyzed whether the area immediately adjacent to the mobile home at 391 Barnard Narrows Road qualifies as curtilage of that residence. *See United*

---

6    The specific dates of these sightings occurred twice on October 20, 2012, once on November 5, 2012, and once on November 20, 2012.  [*See Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 17, Exh. 4, pp. 12-14 ¶¶ 19, 20, 24, 27.]

*States v. Dunn*, 480 U.S. 294, 301 (1987) (noting that whether an area constitutes curtilage should be evaluated by weighing the factors of "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by"). Applying the factors identified as relevant in *Dunn*, the magistrate judge concluded that only the first two factors — the proximity of the area claimed to be curtilage and whether the area is included within an enclosure surrounding the home — supported treating the area as curtilage.[7] [Record No. 59, pp. 20-22]

However, "since law enforcement officers are entitled to observe things in plain sight from publically accessible areas," a court's conclusion that an area is curtilage does not end the analysis. *Anderson-Bagshaw*, 509 F. App'x, at 404. Therefore, because the pole camera enjoyed the same view that could be seen by an individual on Barnard Narrows Road or Dogtown Road, and because it did not provide law enforcement with a vantage point they could not have enjoyed from the ground, the use of the pole camera was not a violation of the defendant's Fourth

---

7       As the Court noted above, a more detailed factual record was developed by the parties in Clifford Leon Houston's criminal case regarding the propriety of the use of the video pole camera. There, the government provided evidence that, despite the appearance of foliage creating a natural enclosure on the side of the residence closest to Barnard Narrows Road, an individual traveling on Barnard Narrows Road would have a clear view of the front of the residence. Based on this evidence, the Court found that the second *Dunn* factor did not support treating the area as curtilage. Instead, only the first *Dunn* factor supported treating the area as curtilage. [*See Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 166, p. 13, Record No. 117, pp. 27-28, Record No. 238, pp. 2-4.] Nonetheless, the Court ultimately concluded that the area is within the curtilage of the residence. [*See Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 166, p. 13 (noting that "[t]he Court makes this finding in the Defendant's favor in order to give him the greatest protection possible to his constitutional rights, even though the Defendant's own conduct in inviting the public to view his property argues against such a finding") (quoting *Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 117, p. 28).]

Amendment rights, provided that the duration and circumstances of its use were reasonable. [Record No. 59, pp. 22-23]

As noted by the magistrate judge, other than limiting the monitoring of the camera primarily to daylight hours, the Court has no other information that the agents attempted to restrain the intrusiveness of the surveillance (for instance by ceasing recording when others besides the defendant or his brother were on the property). [*Id.*, p. 23] Additionally, although the pole camera only captured images which could be viewed from the two public roads surrounding 391 Barnard Narrows Road, in determining the reasonableness of law enforcement's use of the camera, ten weeks of warrantless use is questionable. Relying on the recent Sixth Circuit decision in *Anderson-Bagshaw*, the magistrate judge concluded that the warrantless video surveillance of 391 Barnard Narrows Road beyond fourteen days violated the defendant's reasonable expectation of privacy. [*Id.*, pp. 22-23] The Court agrees to an extent.

Based on concerns regarding the warrantless video recording of a residence's curtilage in the manner outlined above, the Court agrees that ten weeks crosses into the unreasonable, provoking "an immediate negative visceral reaction" suggestive of the Orwellian state. *Cuevas-Sanchez*, 821 F.2d at 251. Notwithstanding this conclusion, the Court is unwilling to announce a bright-line rule of fourteen days as the cut-off date at which point the once legal police video surveillance of unobstructed curtilage from a public point of view, enjoying the same sight-lines as a passer-by, transforms into the unreasonable and illegal. And, as Magistrate Judge Shirley

-10-

noted in his report, no court has established a precise length of reasonable warrantless video surveillance.[8]

## 2. Exclusionary Rule

Regardless, *even if* the Court were to reach the conclusion that all the video surveillance footage in this case obtained after the fourteenth day violated the defendant's Fourth Amendment rights, the exclusionary rule would not bar admission of this evidence at trial. For exclusion to be appropriate, courts must perform a balancing test to determine whether the deterrent benefits of suppression outweigh the substantial costs of "almost always requir[ing] courts to ignore reliable, trustworthy evidence." *Davis v. United States*, 131 S. Ct. 2419, 2427 (2011); *see also United States v. Master*, 614 F.3d 236, 242-43 (6th Cir. 2010). In weighing the deterrent benefits of exclusion, courts focus on the culpability of the law enforcement conduct at issue. Where law enforcement acts with "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs." *Davis*, 131 S. Ct. at 2427 (quotation marks and citations omitted).

The defendant objects to the magistrate judge's conclusion that the exclusionary rule should not apply. He argues that law enforcement's use of the video pole camera was not in good faith, as demonstrated by the use of the pole camera to: (i) observe his neighbors, the Johnson's; (ii) observe the him at night; and (iii) view the back porch of the residence of 391 Barnard Narrows Road. [Record Nos. 62, 64] In support, the defendant provides a number of

---

8    In *Anderson-Bagshaw* the Sixth Circuit suggested in dicta that three weeks is too long. 509 F. App'x at 405. *But see id.* at 424 (Moore, J., concurring) ("I would hold that the video surveillance obtained using the pole camera in this case was an unreasonable search.").

pages of handwritten notes which he purports to be the "log sheets" of the law enforcement officers operating the video pole camera. This material, however, was neither presented in any of his motions to suppress nor during his suppression hearing.[9] Additionally, the Court is unable to discern the authenticity of these documents as presented. As a result, this material is not properly before the Court for consideration. Nonetheless, even if the Court were to consider it, the defendant's arguments on these issues do not demonstrate that law enforcement acted with deliberate disregard for his Fourth Amendment rights.

Beginning with the defendant's objection that law enforcement used the pole camera to observe his neighbors who were not the subjects of the investigation, this argument was already addressed by the magistrate judge. [Record No. 62, p. 17; Record No. 64, pp. 6-7, 10] Specifically, the magistrate judge correctly concluded that the limited observation of a third party does not alter the analysis of the defendant's claims. [Record No. 59, pp. 26] The pole camera was installed on a utility pole across the street from the Johnson residence and trained over their roof in the direction of the Houston property. To the extent the camera may have occasionally recorded the front of the Johnson residence, the residence is viewable from Dogtown Road. Moreover, the defendant does not argue, let alone offer any evidence, that he has a legitimate expectation of privacy in Johnson residence, thereby allowing him to raise any Fourth Amendment claims on this issue. *United States v. Knox*, 839 F.2d 285, 293 (6th Cir. 1988) ("Fourth Amendment rights are personal and may not be asserted vicariously."); *see also United States v. Talley*, 275 F.3d 560, 563 (6th Cir. 2001) ("It is well-established that a defendant

---

9   This material was also not presented at the suppression hearing of Clifford Leon Houston.

-12-

claiming that a search violated his Fourth Amendment rights has the burden of demonstrating that he had a legitimate expectation of privacy in the place that was searched."). Therefore, even if the Court were to accept the defendant's allegations as true, he does not have standing to assert a Fourth Amendment violation on this issue or on behalf of his neighbors.

Next, for the first time, the defendant raises the argument that law enforcement's use of the pole camera was conducted in bad faith because the camera was operated at night. [Record No. 62, p. 18] In support, he provides alleged log sheet entries from November 11 and 12, 2012. [*See* Record No. 62, p. 45.] Although, these entries may indicate that an attempt was made to use the pole camera at night, the evidence properly before the Court, along with review of the alleged log sheets provided by the defendant, demonstrates that the camera was not monitored on a continual basis. And the defendant's argument, even if considered, does not change the Court's analysis concerning the reasonableness of the circumstances surrounding the use of the pole camera, nor does it demonstrate law enforcement acted in bad faith.

Finally, the defendant for the first time raises the argument that the pole camera was used in bad faith because the camera could view the back porch of the residence at 391 Barnard Narrows Road. [Record No. 64, pp. 1-5, 8-9] He contends that the porch should be considered curtilage of the residence. The Court, however, already reached this conclusion. He also claims that he had taken steps to protect the porch from observation by placing various tarps along the structure and, therefore, had a legitimate expectation of privacy while on the porch. However, the evidence of record indicates that the views which the pole camera enjoyed were the same that could be seen by an individual on the public roads surrounding the property.

-13-

As noted above, the defendant offers what he alleges to be the log sheets of law enforcement officers as evidence that the pole camera could see onto the back porch of the residence. Again, this evidence is not properly before the Court. Nonetheless, even if it were considered, it does not change the fact that the pole camera only provided law enforcement with the same view that traditional, street-level surveillance would provide. For instance, there is no evidence that the pole camera allowed law enforcement to obtain information regarding the interior of the residence that could not otherwise have been obtained without a physical intrusion. Additionally, there is no evidence that the camera used in this matter was a technology not in common public use. *See Kyllo v. United States*, 533 U.S. 27, 40 (2001) (holding that when "the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant"). Put another way, there is no evidence that the pole camera allowed law enforcement the ability to see through or behind these tarps. Instead, it would appear from a review of the log sheets that the tarps on the porch were opened and closed on a regular basis by the occupants of the residence, thus, leading to the conclusion that any observation of individuals on the porch was a result of them being exposed due to lack of any tarp covering the area or an occupant deliberately removing the tarp.[10] Again,

---

10      This conclusion is further supported by the photograph of the back porch of 391 Barnard Narrows Road attached to the January 11, 2013 Search Warrant for that residence. [*See Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 15-2, p. 22]. The picture depicts the back porch being broken into approximately nine sections, with a tarp only covering one of the sections. The remaining eight are uncovered. Additionally, a review of the purported log sheets indicates that a number of these entries consist of observations of individuals coming and going from the porch, closing a tarp, or working around the area of the porch.

-14-

the defendant's argument on this issue does not demonstrate that law enforcement acted in bad faith.

In fact, the record properly before the Court is devoid of any evidence that suggests that law enforcement acted with deliberate, reckless, or grossly negligent disregard for the defendant's Fourth Amendment rights. As noted previously, at the time officers installed the subject pole camera, no court had required a search warrant to conduct video surveillance of an unobstructed curtilage. And courts that had previously addressed the issue affirmed the warrantless use of video surveillance. *See Jackson*, 213 F.3d at 1280; *Aguilera*, 2008 U.S. Dist. LEXIS 10103, at *4-5 (adopting magistrate judge's recommendation in *Urbina*, 2007 U.S. Dist. LEXIS 96345). Moreover, the same day the Sixth Circuit issued its decision in *Anderson-Bagshaw*, 509 F. App'x 396, officers sought a search warrant for the continued use of the pole camera. This demonstrates good faith reliance on the absence of any judicial decision requiring a search warrant for the long-term video surveillance of the unobstructed curtilage of a residence. *See Davis*, 131 S. Ct. at 2429 ("Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."). Suppression of the evidence would have little to no deterrent value. *See Higgins*, 557 F.3d at 391. In short, given the facts of this case, and in particular law enforcement's conduct, the deterrence benefits of suppression do not outweigh the cost to society. Therefore, exclusion of this evidence is not warranted.

-15-

## B.    The December 19, 2012 Search Warrant

The defendant also contends that any evidence obtained as a result of the December 19, 2012 search warrant issued by United States Magistrate Judge H. Bruce Guyton for the continued use of the pole camera should be suppressed.  In support, he argues that the Magistrate Judge was not neutral and detached when he issued the warrant.  Additionally, he asserts that the warrant was not supported by probable cause.  Magistrate Judge Shirley found both contentions to be without merit.  [Record No. 59, pp. 26-40]

### 1.    Neutral and Detached Magistrate Judge

The defendant's argument that Magistrate Judge Guyton was not a neutral and detached judge when he issued the search warrant is based upon a misguided belief that his brother Clifford Leon Houston's previous lawsuit against the Magistrate Judge biased Magistrate Guyton against the defendant.  This contention is completely without merit.  *See Callihan v. E. Ky. Prod. Credit Ass'n*, No. 89-5578, 1990 WL 12186, at *2 (6th Cir. Feb. 13, 1990); *United States v. Todd*, No. 3:05-cr-00090, 2008 WL 542972, at *4 (M.D. Tenn. Feb. 25, 2008).  As the Court has explained on several occasions, the mere fact that the defendant, or another member of his family, files a lawsuit against a judge does not demonstrate bias on the part of that judge.  Moreover, these lawsuits were filed by the defendant's brother, not the defendant.  In short, the defendant has failed to offer any basis to support a finding that Magistrate Judge Guyton was not

-16-

a neutral and detached judge when he issued the December 19, 2012 search warrant.[11] [*See also* Record No. 146, pp. 3-7; Record No. 53.]

### 2. Probable Cause and Reliance on the Confidential Informant

The magistrate judge also correctly concluded that the December 19, 2012 search warrant was supported by probable cause. [Record No. 59, pp. 30-40] As noted above, suppression of the pole camera footage from October 9, 2012 to December 19, 2012, is not warranted. Therefore, consideration of that evidence is proper in conducting a probable cause analysis. The supporting affidavit of the December 19, 2012 search warrant indicates that Rocky Joe Houston, a convicted felon, had been recorded on fourteen different days in the possession of firearms on the property. [*Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 17-4, pp. 11-30 ¶¶ 16-30] Special Agent Dobbs also attested that, based on his prior experience and training, possessors of firearms usually keep those firearms for a lifetime. [*Id.*, p. 14 ¶ 31] This information provides sufficient evidence to conclude that the warrant was supported by probable cause and that there was a "fair probability" that the continued use of the pole camera would uncover more evidence of the defendant being in possession of a firearm in violation of 18 U.S.C. § 922(g). *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (noting that a search warrant must be supported by probable cause, which "is a fair probability that contraband or evidence of a crime will be found in a particular place").

_____

11    To the extent the defendant raises arguments concerning the sufficiency of the criminal Complaint in this matter, these arguments are identical to those the Court already addressed when ruling on his various motions to dismiss the Indictment. [*See* Record No. 146, p. 5-7.] The Court found the defendant's arguments regarding the sufficiency of the Complaint to be false, and overruled the defendant's objections. For the same reasons, the Court will overrule his objections a second time.

The supporting affidavit also contains information that the defendant's sister (Lisa Burris) told law enforcement that the defendant usually possessed a firearm and that there were a number of firearms on the property. [*Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 17-4, pp. 7-8 ¶ 6] Additionally, the affidavit indicates that a home healthcare nurse informed officers that the defendant was always armed, and that she had seen multiple firearms on the property. [*Id.*, p. 8 ¶ 7] To the extent the defendant argued against the reliability of these witnesses, the affidavit contains sufficient information to allow the issuing magistrate judge to properly weigh their credibility. *See United States v. Hodge*, 714 F.3d 380, 385-86 (6th Cir. 2013). In short, the magistrate judge correctly concluded that information from Burris and Nurse Long could properly be considered by the issuing magistrate judge and that this information supported a finding of probable cause. [Record No. 59, pp. 32-45, 39-40]

The defendant also argues that information provided by the confidential informant was improperly relied upon by the magistrate judge when issuing the search warrants in this matter. However, the confidential informant had first-hand or eyewitness knowledge concerning the defendant's possession of firearms. [*Id.*, p. 37] The affidavit indicates that the confidential informant had known the Houston brothers for a number of years, was last at the Houston family property in April 2012, and had been inside both the defendant's and his brother Clifford Leon Houston's residences. [*Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 17-4, p. 9 ¶¶ 10-11] The confidential informant had knowledge that the defendant and Clifford Leon Houston kept multiple firearms at their residences because he has seen them there — a fact corroborated by both Nurse Long and Burris. [*Id.*, p. 8 ¶ 7]

-18-

The confidential informant's statement that the Houston brothers were always armed and carried two pistols in their waistband is also corroborated by Nurse Long statement that "Leon Houston was always armed, sometimes with as many as three handguns at his waist." [*Id.*, pp. 8-9 ¶¶ 7, 11] Additionally, the confidential informant's statement that the Houston brothers never leave their property unarmed is corroborated by Burris, who indicated that the defendant normally carries a firearm whenever he leaves the property. [*Id.* ¶ 6] Each example demonstrates that Special Agent Dobbs' sworn affidavit provided substantial corroboration of the confidential informant's statements. Additionally, as outlined above, the confidential informant, along with Nurse Long and Burris, provided information that was not solely public knowledge or from public sources. The defendant's arguments to the contrary are without merit.

Moreover, the level of detail in the statements provided by the confidential informant also supports a finding of reliability. *See United States v. Gunter*, 551 F.3d 472, 480 (6th Cir. 2008); *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005) (noting that "a detailed description of what the informant observed first-hand" is an "indicia of the informant's reliability"). For instance, the informant provided a highly-detailed description of the types of weapons carried by the Houston brothers as well as where those weapons were carried. [*Clifford Leon Houston*, Criminal Action No. 3: 13-10, Record No. 17-4, p. 9 ¶ 11] Additionally, the information provided by the confidential informant was corroborated by independent police investigation. *See Illinois v. Gates*, 462 U.S. 213, 243-45 & n.13 (1983) (holding that law enforcement does not have to corroborate criminal activity to demonstrate probable cause and noting that "innocent behavior frequently will provide the basis for a showing of probable cause . . . [i]n making a

-19-

determination of probable cause the relevant inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts"). [*See also* Record No. 59, pp. 47-39.] The Court agrees with the magistrate judge's conclusions regarding the reliability of the confidential informant. This information supports a probable cause finding to support the issuance of the search warrants.

Based on the foregoing, and in consideration of the totality of the circumstances, the issuing magistrate judge had an ample basis to determine that probable cause existed and supported the belief that the continued monitoring of the pole camera would provide evidence of the defendant in possession of firearms in violation of 28 U.S.C. § 922(g)(1). *See Gates*, 462 U.S. at 238. Evidence including video footage of the defendant in possession of firearms in the open field, video footage of him shooting and carrying firearms during the dates of October 9-23, 2012, and the information provided by Lisa Burris and the confidential informant, supports such a finding. Additionally, *even if* the video surveillance from October 23 through December 18, 2012 was not considered, the affidavit still provides a sufficient basis to support the issuance of the search warrants.

### C. The January 11, 2013 Search Warrants

As noted above, the defendant argues that suppression of all evidence resulting from the warrantless video pole camera footage is necessary because it is fruit of the poisonous tree. The magistrate judge concluded that this argument presumably extends to evidence seized during the searches of the three residences on the Houston family property because probable cause for those

-20-

search warrants was based, in part, upon the warrantless video pole camera footage. [Record No. 59, pp. 40-41] Nonetheless, the defendant's argument is without merit.

The Court has already found that suppression of the warrantless pole camera footage is not warranted, as well as concluded that, even if it were to exclude any evidence from October 23 through December 18, 2012, the December 19, 2012 search warrant was sufficiently supported by probable cause. And, as noted by the magistrate judge, the affidavits in support of January 11, 2013 search warrants contains the same information as the supporting affidavit of the December 19, 2012 search warrant, along with two additional sightings of the defendant with a firearm and a sighting of the defendant, on January 7, 2013, with what appeared to be a handgun. In short, the January 11, 2013 search warrants were properly supported by probable cause. Additionally, because probable cause supported the January 11, 2013 search warrants, even without considering any evidence from the extended warrantless pole camera footage, the evidence seized is not fruit of the poisonous tree.[12]

### D.     Various Allegations of Conflicts of Interest

The defendant also argues that Magistrate Judge Shirley ruled on his motions to suppress while under a conflict of interest. [Record No. 62, pp. 1-3] He bases these allegations on a purported conversation between Magistrate Judge Shirley and the defendant's former elbow counsel, prior to the attorney being appointed to act as stand-by counsel to the defendant. [*Id.*, pp. 1-2] He also contends that a subpoena request he filed with the Clerk of the Court has not

---

12      For the same reason, the magistrate judge correctly concluded that an analysis of whether the defendant had standing to contest the searches of his brother and daughter's residences was not necessary. [Record No. 59, p. 41]

-21-

been issued ant that this is further evidence that the Magistrate Judge is not neutral and detached. [*Id.*, p. 3] The defendant, however, has already raised these same arguments in his objections to Magistrate Judge Shirley's report recommending that his motions to dismiss the Indictment be denied. And the Court has found his allegations of an alleged conflict of interest to be without merit. [*See* Record No. 146, pp. 7-9; *see also* Record No. 52] For the same reasons, the defendant's arguments are still without merit. Magistrate Judge Shirley did not have a conflict of interest when he ruled on the defendant's motions to suppress.

The defendant also argues that "due to conflicts of interest that are highly visible and patently obvious between [United States District Judge] Thomas A. Varlan and the defendant" that Judge Varlan must recuse himself from a number of unrelated civil matters. [Record No. 62, p. 16] Judge Varlan is not involved in the defendant's criminal case now before the Court and the civil matters identified by the defendant are unrelated to this matter as well. Therefore, the defendant's objection will be denied.

Finally, the defendant argues that United States Attorney William C. Killian and AUSA Jennings have a conflict of interest and must recuse. [Record No. 62, pp. 4-10] He argues that because he erected billboards located on his property criticizing various public officials, including U.S. Attorney Kilian, this prevents him from prosecuting the defendant. The Court has already found the defendant's argument on this point to be without merit. [Record No. 133] Additionally, to the extent the defendant alleges that AUSA Jennings and U.S. Attorney Killian had an improper *ex parte* conversation with attorney Randy Rogers, who previously represented the defendant in an unrelated state court matter, and that these individuals conspired to steal from

-22-

the defendant and to cover it up, these allegations are entirely unsubstantiated. The defendant provides no factual support for these allegations. Moreover, none of the defendant's arguments regarding the prosecution, even if true, would provide grounds for granting his motions to suppress.

## III.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** as follows:

1.     The Report and Recommendation of Magistrate Judge C. Clifford Shirley, Jr. [Record No. 59] is **ADOPTED** and **INCORPORATED** by reference.

2.     Defendant Rocky Joe Houston's Objections to Magistrate's Report and Recommendation [Record Nos. 62, 64] are **OVERRULED**.

3.     Defendant Rocky Joe Houston's Motions to Suppress [Record Nos. 29, 46; *United States v. Clifford Leon Houston*, Criminal Action No. 3: 13-10 (E.D. Tenn. Jan. 14, 2013), Record Nos. 14, 16] are **DENIED**.

This 23rd day of January, 2014.

Signed By:

*Danny C. Reeves* DCR

**United States District Judge**